JUDGE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR23-103-RAJ |
| Plaintiff, | |
| v. | DEFENSE SENTENCING MEMORANDUM |
| JOHNY MIXAYBOUA, | |
| Defendant. | |

Johny Mixayboua comes before this Court for sentencing for the crimes of Theft of Government Property, Mail Theft, Access Device Fraud, and Unlawful Possession of a Firearm. The defense recommends a total sentence of 33 months in custody and three years of supervised release.

Mr. Mixayboua does not dispute that the offenses here are serious and caused a significant disruption in many people's lives. Likewise, he does not dispute that, at first glance, his criminal history is alarming. However, that is not the end of the story. In sentencing Mr. Mixayboua, one must also consider that he grew up without a strong and supportive father figure, that he was expelled from school and left to fend for himself without any marketable skills at a very young age, and that he suffered from a serious drug addiction, one that made it difficult for him to live without drugs and drove him to seek out ways to obtain them despite not having a job to help him afford them. While they do not justify his actions, those details help explain why he turned to actions such as these to pay his bills and support his drug habit.

DEFENSE SENTENCING MEMORANDUM
(*United States v. Mixayboua*, CR23-103-RAJ) - 1

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

This is the opportunity that Mr. Mixayboua has needed to turn his life around. Although he has been incarcerated several times before, there is ample reason for optimism this time. These are the first federal charges he has faced. This is also the first time he has appeared before a court as a fully mature adult who is committed to changing his ways. While it may be easy to look at Mr. Mixayboua's criminal past and the actions at issue here and conclude that he is incorrigible and needs to be sent a strong message, a glance beneath the surface shows a different situation—one in which he unquestionably has struggled throughout his life but now is committed to bettering himself—and he asks this Court to afford him the opportunity to demonstrate that he can indeed do so. The defense recommendation, 33 months, balances the need to punish Mr. Mixayboua and protect the community while at the same time giving him some hope for rehabilitation.

I.   BACKGROUND

One would be tempted to look at Mr. Mixayboua's upbringing and conclude that he did not experience the same level of hardship that many other individuals who come before this Court have experienced. He grew up with loving parents who, as documented in the presentence report, "provided for all of his needs throughout his formative years." PSR ¶ 75. He has three brothers, none of whom went down the same road he has traveled. PSR ¶ 73. He did not experience the same degree of adverse childhood experiences that many other defendants have had to overcome. PSR ¶ 91. However, those details paint an incomplete picture of how Mr. Mixayboua became the man he is today.

Throughout Mr. Mixayboua's youth, his father suffered from a serious medical condition that left him weak, greatly hindered his mobility, and led to frequent drinking. PSR ¶¶ 74–75. It is well established that the lack of a significant father figure is detrimental to the development of young boys. While Mr. Mixayboua's father was

DEFENSE SENTENCING MEMORANDUM
(*United States v. Mixayboua*, CR23-103-RAJ) - 2

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

physically present, in many other ways, he was not there for Johny. It is admirable that his brothers persevered, but that not should be held against him. It is unsurprising that, after seeing his father turn to alcohol to confront the problems he was facing, Mr. Mixayboua developed a substance abuse issue at a very young age and his addiction has grown since then. PSR ¶¶ 92–96.

Mr. Mixayboua was expelled from school while he was in the ninth grade. PSR ¶ 97. He reported not being afforded the opportunity to attend any sort of alternative school after that. PSR ¶ 77. This left him adrift in the world, without the means to support himself, feeling like a disappointment to his parents. PSR ¶ 77. This led him to run away from home for months at a time and to seek out means to support himself and feed his addiction without any real skills. While not appropriate or justified, it is unsurprising that as a drug-addicted young man, living on his own without life or vocational skills, he turned to illegal activities like theft to support himself.

Mr. Mixayboua does not dispute that he is the one responsible for being kicked out of school and for developing an addiction to drugs and alcohol. However, he was 14 years old. We do not expect people that young to be able to make significant decisions that impact the rest of their lives. It is regrettable that Mr. Mixayboua's actions at that age put him on the path to where he is today. It is true that Mr. Mixayboua failed, but we as a community also failed Mr. Mixayboua, leading him to this point. This is not the end of Mr. Mixayboua's story though. He is still a young man at only 27 years old. He is committed to confronting and overcoming his problems. While has had opportunities to do so before, that is often easier said than done, and he did not possess the same maturity and determination that he does now. Although one may say that Mr. Mixayboua has been given multiple breaks and did not take advantage of those, he is in a different position than he was at any of those times. He asks this Court to recognize as much and give him the opportunity to show he is indeed committed to

DEFENSE SENTENCING MEMORANDUM
(*United States v. Mixayboua*, CR23-103-RAJ) - 3

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

improving himself and developing a pro-social lifestyle. A sentence of 33 months in custody followed by three years of supervised release would do just that.

## II. THIS COURT MUST IMPOSE THE MINIMUM TERM NECESSARY TO ACHIEVE THE GOALS OF SENTENCING.

The defense recommendation, 33 months of imprisonment, is at the low end of the advisory guideline range if this Court embraces the defense position on the base offense level, and it is below the advisory guideline range if it does not. However, a 33-month sentence is consistent with the statutory mandate that this Court impose the minimum term necessary to comply with the goals of sentencing. 18 U.S.C. §§ 3553(a), 3582.

### A. The Nature and Circumstances of the Offense

Mr. Mixayboua acknowledges that his conduct in this matter is troubling. He accepts full responsibility for his behavior and agrees that his decision to carry a firearm warrants a prison sentence that will reflect the serious nature of his offense. He also acknowledges that interference with the mail is a serious act that impacts countless people's lives. He does not seek to downplay or minimize his conduct. He is ashamed of his behavior. That does not mean it would be fruitless to try to understand how he got to a place where he committed these crimes though. These crimes were born out of Mr. Mixayboua's circumstances. He had a serious drug addiction that was certainly not cheap to maintain. He lacked any vocational skills to support himself and found himself associating with others who also supported themselves through illegitimate means. He carried a weapon not to harm or even threaten anyone but because he lived a dangerous lifestyle and it gave him a feeling of security.

At the time he engaged in these actions, Mr. Mixayboua did not appreciate the gravity of any of them. He clearly did not grasp that the United States Postal Service is not just a faceless government entity but an agency entrusted with some of our most

DEFENSE SENTENCING MEMORANDUM
(*United States v. Mixayboua*, CR23-103-RAJ) - 4

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

important information, materials, and communications; and he not only harmed those individuals from whom he stole but also impacted all of those individuals whose access to or confidence in the mail was disrupted. He did not realize the significant impact that identity theft can have on people's lives, even if they do not lose money out-of-pocket. He did not internalize that carrying a weapon for protection necessarily means there is a greater opportunity that he will feel the need to use it and that it would put countless members of the community in danger. He has had a lot of time to think over the past ten months at the Federal Detention Center and now has a much more profound understanding of the consequences of his actions. A 33-month sentence will ensure this is a lesson he does not forget. A sentence longer than that, however, would put too much emphasis on the seriousness of the offense and have no marginal benefit to either Mr. Mixayboua or the community.

### B. Mr. Mixayboua's History and Characteristics

As outlined above, while Mr. Mixayboua's life story is replete with bad decisions and inappropriate behavior, that is predictable based on his addictions and lack of marketable skills. Mr. Mixayboua is dedicated to overcoming his struggle with addiction and his pattern of criminal behavior. He is now a grown man and wants to act like one.

This is the first time Mr. Mixayboua finds himself before a federal court and the first time he will have the benefit of the training and programming he will receive in the Bureau of Prisons along with the resources and support of United States Probation. PSR ¶¶ 56–66. It is also the first time he has been in trouble after the age of 25, the age at which it is well established that the brain has finished developing. PSR ¶ 66; *see, e.g.*, Mariam Arain et al., "Maturation of the Adolescent Brain," Neuropsychiatric Disease and Treatment, 9: 449–461 (2013), *available at:* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3621648/#b5-ndt-9-449 ("It is well

DEFENSE SENTENCING MEMORANDUM
(*United States v. Mixayboua*, CR23-103-RAJ) - 5

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

established that the brain undergoes a 'rewiring' process that is not complete until approximately 25 years of age. This discovery has enhanced our basic understanding regarding adolescent brain maturation and it has provided support for behaviors experienced in late adolescence and early adulthood."); *see also Johnson v. Texas*, 509 U.S. 350, 367 (1993) ("A lack of maturity and an underdeveloped sense of responsibility are found in youth more often than in adults and are more understandable among the young. These qualities often result in impetuous and ill-considered actions and decisions."). It is true that Mr. Mixayboua committed the actions that have brought him before this court after the age of 25, and he understands he will be punished for them, but that punishment should not be magnified based on actions he took before he reached that point of maturity.

While Mr. Mixayboua's checkered history and the fact that he failed to embrace the opportunity provided him through his DOSA sentence are lamentable, all those actions occurred well before he reached the age of 25 and did not have the same impact on him as will the sentence handed down in this case and the accompanying opportunities to better himself. PSR ¶ 66. Mr. Mixayboua is committed to bettering himself, putting drugs and alcohol behind him, learning a trade, and developing a pro-social lifestyle. Sent. Rec. at 5–6. He is now in a better position to achieve that than he ever has been before, and he implores this Court to consider that in determining his sentence.

    **C.**    **A Prison Term Longer than 33 Months Is Not Necessary to Protect the Public.**

The need to protect the community is an important consideration in every sentencing hearing. The defense agrees that a serious term of imprisonment is warranted, and 33 months is a long term of incarceration. In this case, the best way to protect the public is by helping set up Mr. Mixayboua with the resources he needs to

DEFENSE SENTENCING MEMORANDUM
(*United States v. Mixayboua*, CR23-103-RAJ) - 6

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

transition into the community and develop a structured life out of custody, not by imposing a particularly harsh term of imprisonment.

Research has shown that receiving a longer prison sentence increases the likelihood that a defendant will reoffend. *See* Gendreau, P., and Goggin, C., *The Effects of Prison Sentences on Recidivism*, Solicitor General of Canada (1999) (http://www.prisonpolicy.org/scans/e100012.htm) at 12–13 (Among a group of equally high-risk offenders, those who received longer sentences had a higher recidivism rate). Mr. Mixayboua acknowledges that, in the American criminal legal system, prison sentences typically get tougher and longer when a person continues to commit new offenses and, following the revocation of his DOSA sentence in state court, he served 43 months in state custody. PSR ¶ 66. There is a certain appeal to this logic. However, this Court should resist the temptation to conclude that a longer prison sentence is required for Mr. Mixayboua to "get the message" because the research does not support such a view, particularly when, as discussed above, his previous sentence was handed down before his brain reached full maturity. More severe sanctions for those who commit a second crime "appear to be more criminogenic." Mears, D. P., & Cochran, J. C., *Progressively Tougher Sanctioning and Recidivism: Assessing the Effects of Different Types of Sanctions*, Journal of Research in Crime and Delinquency, 55(2), 194–241 (2018). "For example, among individuals whose first felony led to imprisonment, recidivism was lower when, in response to a second felony, they were sentenced to less severe sanctions . . . . [R]egular and intensive probation typically were associated with lower rates of recidivism." *Id*. Other research shows that repeat offenders benefit more from drug treatment than do first-time offenders. Missouri Sentencing Advisory Commission, *Drug Treatment Can Reduce Recidivism*, 1 Smart Sentencing 2 (July 2009) ("As to drug treatment alternatives, offenders with extensive prior criminal history benefit more [from drug treatment] than offenders with no prior

DEFENSE SENTENCING MEMORANDUM
(*United States v. Mixayboua*, CR23-103-RAJ) - 7

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

1  criminal history (a reduction in incarceration of 15 percentage points compared with 8
2  percentage points)."). In Mr. Mixayboua's case, stepping up his sanction based on the
3  greatest time he previously served is unwarranted. He is getting the message and a
4  longer prison sentence will not deliver it any more strongly.

5        Probation argues that the possession of a weapon in this case demonstrates an
6  escalation in criminal activity which warrants an escalation in sanctions, but that is not
7  the case. Sent. Rec. at 6. Although it is concerning that this is a type of criminal act he
8  has not engaged in previously, it does not mean what Probation asserts; it merits
9  recognition that he was a first-time offender in this type of offense and is committed to
10 avoiding it in the future. Moreover, it bears noting there has been no assertion that
11 Mr. Mixayboua engaged in or even threatened any violent behavior. It is clear that the
12 firearm here was little more than a crutch—something to make Mr. Mixayboua feel safe
13 even if he had no intent on using it. Now, regardless of what sentence this Court
14 imposes, he will be punished quite harshly, more harshly than he would have been
15 punished on just the mail-related charges. This is not a circumstance in which this
16 message—that it is unacceptable to carry a firearm just because it gives you a feeling of
17 security—needs to be sent with a particularly long sentence. He has received that
18 message and this Court can be confident that, following his sentence, he will not revert
19 to possessing firearms.

20       Probation notes that the supposed danger Mr. Mixayboua presents is highlighted
21 by the fact that he was recorded discussing continuing criminal activity soon after being
22 arrested in this case. Sent. Rec. at 6; PSR ¶ 24. If the fact that Mr. Mixayboua engaged
23 in such communications ten months ago is a strike against him, the fact that such
24 behavior ceased soon after weighs more strongly in his favor. That belies Probation's

25
26

DEFENSE SENTENCING MEMORANDUM
(*United States v. Mixayboua*, CR23-103-RAJ) - 8

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

argument that this experience will put the community in danger.[1] Instead it shows that he was a person in great turmoil at the time of his arrest. Anyone who was in the courtroom at the time can attest to that fact. However, he has become clean and more clear-headed during his time at the FDC. He has developed a commitment to creating a pro-social lifestyle for himself. A 33-month sentence is sufficient to protect the public from Mr. Mixayboua, and the fact that he voluntarily and without prompting discontinued his discussion of criminal acts over the phone demonstrates that.

### D.    A Lengthy Prison Term Will Not Further the Goal of General Deterrence.

Increasing the length of Mr. Mixayboua's sentence will not further the goals of general deterrence. Indeed, the idea that lengthy prison sentences serve as a general deterrent to future offenders has been repeatedly refuted. The Department of Justice report summarizing research on the general deterrent effect of incarceration made several determinations, including

- Sending an offender to prison isn't a very effective way to deter crime.

- Increasing the severity of punishment does little to deter crime.

National Institute of Justice, *Five Things About Deterrence*, U.S. Department of Justice, Office of Justice Programs (July 2014) (summarizing Daniel Nagin, *Deterrence in the*

---

[1] One may attempt to rebut this with the argument that his charges in this case and knowledge of the recording of his telephone calls dissuaded him from openly engaging in such communications and that he only obscured his criminal activities rather than discontinued them. However, these calls were not brought to anyone's attention until January 2024, long after, from all indications, he ceased speaking about any such activities on the phone. Moreover, this is not his first interaction with the criminal justice system, and he would have previously learned that calls from custody are recorded. Thus, there is no reason to believe that there were any intervening developments that changed his understanding of whether his calls were being recorded and his resulting behavior. Rather, it demonstrates that he initially continued in his criminal mindset but after only a few weeks getting clean at the FDC, he left that behavior behind him.

DEFENSE SENTENCING MEMORANDUM
(*United States v. Mixayboua*, CR23-103-RAJ) - 9

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

*21st Century*, Crime and Justice in America: 1975–2025 (ed. Michael Tonry, University of Chicago Press, 2013)). Accordingly, lengthening Mr. Mixayboua's sentence will not curb future offenses and will not serve the goal of general deterrence.

### E. A Sentence of 33 Months Is Adequate to Provide Mr. Mixayboua with the Rehabilitation and Treatment He Needs.

It is abundantly clear that Mr. Mixayboua is someone who will benefit from drug treatment and vocational training that he can receive while in federal custody and on supervised release. Sent. Rec. at 7. However, a sentence of 33 months in custody followed by three years of supervised release is ample time to provide those opportunities. He will have the opportunity to engage in drug treatment and learn skills that will avoid him needing to revert to stealing to meet his basic needs or to feed an expensive habit. He has never had the benefit of federal supervision before nor has he had the opportunity to participate in some of these programs after he has reached full maturity. A prison sentence will help Mr. Mixayboua stay clean and develop much needed life skills. However, his term of supervised release will do so even better than additional incarceration would. Moreover, an excessive term in custody could be counterproductive to the rehabilitative aims of our judicial system. Accordingly, he requests that this Court impose a sentence of 33 months at a facility where he can engage in drug treatment, followed by three years of supervised release.

## III. THE SENTENCING GUIDELINES

As Mr. Mixayboua noted in his objections to the draft presentence report, he objects to the guideline calculation with a base offense level of 20 for the weapon having a large capacity magazine as opposed to a base offense level of 14. In this case, the guideline is unambiguous, and no further definition is necessary to understand that a large capacity magazine is necessarily one that holds more bullets than a typical magazine. In this case, a 17-round magazine does not meet that definition. Even if this

DEFENSE SENTENCING MEMORANDUM
(*United States v. Mixayboua*, CR23-103-RAJ) - 10

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

Court agrees with Probation and concludes that the augmented base offense level should be 20, a significant downward departure is warranted because the magazine with which Mr. Mixayboua's weapon was equipped only held 17 rounds, two more than the number the commentary arbitrarily defines as constituting "large capacity."

      **A.**      **The Enhancement for a Large Capacity Magazine Is Inapplicable in This Case.**

Under § 2K2.1 of the United States Sentencing Guidelines, the base offense level for possession of a firearm by a prohibited person is 14, while the base offense level for possession of a firearm with a large capacity magazine is 20. U.S.S.G. § 2K2.1. The guideline itself contains no definition of a "large capacity magazine" with the term only being defined in the commentary as one that "could accept more than 15 rounds of ammunition" because such a weapon "has the ability to fire many rounds without reloading . . . ." U.S.S.G. § 2K2.1, cmt. 2. That clarification is unnecessary because the term is unambiguous in that it refers to a magazine capable of accepting more rounds than ordinarily used. As the Ninth Circuit has recognized, "[o]ur interpretation will most often begin and end with the text and structure of the guidelines' provisions themselves . . . . In determining the 'plain meaning' of a word, we may consult dictionary definitions, which we trust to capture the common contemporary understandings of the word." *United States v. Scheu*, 83 F.4th 1124, 1128 (9th Cir. 2023); *see also Kisor v. Wilkie*, 139 S. Ct. 2400, 204 L. Ed. 2d 841 (2019); *Stinson v. United States*, 508 U.S. 36 (1993); *United States v. Castillo*, 69 F.4th 648, 655 (9th Cir. 2023). If there is a common-sense definition of a term, deference to the guideline commentary is unwarranted.

The common understanding of the meaning of "large capacity magazine" is not ambiguous nor does it support application of the guideline enhancement. The term "large capacity" necessarily connotes something greater than the standard capacity,

DEFENSE SENTENCING MEMORANDUM
(*United States v. Mixayboua*, CR23-103-RAJ) - 11

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

not an arbitrary number. This common-sense understanding of a large capacity magazine is demonstrated by the first sentence of the Wikipedia entry for such a magazine, which states that it is "a magazine capable of holding a higher than normal number of ammunition rounds for a particular firearm (i.e., more than a standard magazine for that firearm)." *See* "High-Capacity Magazine," Wikipedia, *available at:* https://en.wikipedia.org/wiki/High-capacity_magazine; *see also Duncan v. Bonta*, Case No. 17-cv-1017-BEN-JLB (S.D. Ca. Sept. 22, 2023) ("[T]he previously law-abiding California citizen who buys and keeps at her bedside a nationally popular Glock17 with its *standard 17-round magazine*, becomes the criminal . . . .") (emphasis added); Glock, "G17 Standard 9x19mm," *available at*: https://us.glock.com/en/pistols/g17 ("[T]he GLOCK 17 is trusted by law enforcement officers and military personnel around the globe because of its unsurpassed reliability, *optimal magazine capacity of 17 rounds in a standard magazine* and its low weight.") (emphasis added). A definition of what it functionally means for a magazine to be "large capacity" is far more appropriate than an arbitrary number inserted into the commentary without the benefit of notice-and-comment rulemaking or a legislative determination.

      A magazine that exceeds the standard load for a particular weapon is clearly what is meant by the term, and any attempt to specifically quantify it for all weapons as the commentary attempts to do is unnecessary and overreaching. The Ninth Circuit addressed a similar issue in *United States v. Kirilyuk*, when it held that a commentary provision ascribing a specific loss amount to an offense regardless of the facts at hand was inappropriate. 29 F.4th 1128, 1138 (9th Cir. 2022) ("Though dictionary definitions for 'loss' may vary, they make one thing clear: 'No reasonable person would define the term "loss" from a stolen [credit] card as an automatic $500' rather than a fact-specific amount.") (quoting *United States v. Ricciardi*, 989 F.3d 476, 486 (6th Cir. 2021)). Likewise, no reasonable person would assume that any magazine with more than fifteen

DEFENSE SENTENCING MEMORANDUM
(*United States v. Mixayboua*, CR23-103-RAJ) - 12

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

rounds is necessarily "large capacity" without looking at the relevant facts, such as the type of weapon or what magazines are commonly manufactured and sold for that weapon.

That this particular magazine does not meet the common-sense understanding of what a "large capacity magazine" for this weapon would be is proven by the fact that on the website for Polymer80, the manufacturer of the weapon that Mr. Mixayboua has pled guilty to possessing, there are only three clips for sale, one of which holds 17 rounds. Polymer80, "P80 Pistol Magazines," *available at*: https://www.polymer80.com/partsandaccessories/pistolmags.[2] In fact, in line with what the court noted in *Duncan*, there are many listings on the internet for a Glock p80 9x19 firearm, which appears to be the gun this particular weapon was modeled after, identifying the "standard" magazine capacity as 17 rounds. *See, e.g.*, Guns.com, "Glock P80," *available at*: https://www.guns.com/firearms/handguns/semi-auto/glock-p80-9mm-luger-semi-auto-17-1-rounds-4-49-barrel-new?p=89739&soldout=1; Sportsman's Warehouse "Glock P80 G! 9mm Luger 4.49in nDLC Pistol – 17 +1 Rounds," *available at* https://www.sportsmans.com/shooting-gear-gun-supplies/handguns/glock-p80-g1-9mm-luger-449in-ndlc-pistol-171-rounds/p/1663890. If one-third of the magazine styles sold by the firearm's manufacturer can hold as many rounds as the magazine Mr. Mixayboua possessed, and if the standard magazine size for a Glock P80, after which Polymer80 models its weapon, is that same number of rounds, the magazine is not capable of holding a higher than normal number of ammunition rounds and is not a

---

[2] Probation rejects this argument, noting that the 17-round magazine is marked as not permitted for sale in Washington. However, that is based on a change in the law that only recently took effect, is also based on an arbitrary number, applies more broadly than the federal definition of a large capacity magazine, and does not change the fact that this is one of three available magazines on the manufacturer website. *See Brumback v. Ferguson*, No. 1:22-cv-03093-MKD, 2023 U.S. Dist. LEXIS 170819 (E.D. Wash. Sept. 25, 2023).

DEFENSE SENTENCING MEMORANDUM
(*United States v. Mixayboua*, CR23-103-RAJ) - 13

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

large capacity magazine. This is likely why the parties agreed in the plea agreement that the base level is 14 and why the draft PSR, despite recognizing that the magazine held 17 rounds, did not initially apply the base offense level for a high-capacity magazine.[3] Dkt. 24 at 10; PSR ¶¶ 3, 22.

If the Sentencing Commission wanted a base offense level of 20 to apply to any magazine exceeding 15 rounds, they could have easily drafted a provision saying that and subjected that provision to notice-and-comment rulemaking and congressional review. *Ricciardi*, 989 F.3d at 484 ("To amend the commentary, then, the Commission need not follow the same procedures that govern changes to the substantive rules in the guidelines themselves (congressional review and notice-and-comment rulemaking.)"). But they did not, likely because the public and Congress would have had an issue with arbitrarily singling out a particular number of bullets for a concept that cannot be defined in such a manner. Instead they used a term like "large capacity magazine" which necessarily connotes more than a standard magazine, not a magazine with 16 or more rounds, to the guideline itself. They only subsequently ascribed an arbitrary number through commentary which is not vetted by Congress or the public. Because there is a common-sense definition that does not include this number, deference to the commentary to determine whether this is or is not a large capacity magazine is inappropriate and Mr. Mixayboua's base offense level should be 14.

---

[3] It bears noting that the guideline provision setting the base offense level at 20 for a large capacity magazine appears before the one establishing a base offense level of 14 if there was no such magazine. U.S.S.G. § 2K2.1(a). Thus, in order to apply the base offense level of 20, a reader must necessarily initially rule out the possibility that the magazine was a large capacity one. That all parties initially came to that conclusion manifests that this magazine does not meet the common-sense definition of a large capacity magazine and deference to the commentary is unnecessary and inappropriate.

DEFENSE SENTENCING MEMORANDUM
(*United States v. Mixayboua*, CR23-103-RAJ) - 14

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

### B. If this Court employs the higher base offense level, it should grant Mr. Mixayboua a variance to put his sentence more in line with what it would be based on the lower base offense level.

Even if this Court agrees with Probation and concludes that the commentary definition of "a magazine or similar device that could accept *more than* 15 rounds of ammunition," is appropriate, a significant variance—equivalent to the five or six offense levels that this change increases—would be warranted. 18 USCS Appx § 2K2.1, comment 2 (emphasis added). That is because the magazine at issue here was only capable of carrying two rounds, one layer of bullets, above that threshold. To apply the same sanction to it as one would apply to a magazine holding 30, 50, or 100 rounds would be improper and disproportionate. Increasing Mr. Mixayboua's base offense level from 14 to 20 would nearly double his guidelines range, from 33–41 months to 57–71 months, for just two bullets. Conversely, had Mr. Mixayboua possessed two magazines, each carrying 15 rounds, he would still be subject to a base offense level of 14, despite having the capacity to fire 13 more rounds than fit in his "large capacity" magazine. That is inherently unjust and would certainly lead to significant sentencing disparity. If the Court employs a base offense level of 20, a significant downward variance would be warranted to account for the actual conduct that occurred here and avoid disparate sentences between Mr. Mixayboua and those possessing weapons capable of holding only two fewer rounds than his weapon held.

## IV. CONCLUSION

Mr. Mixayboua agrees with Probation that "[a] guideline sentence is greater than necessary to achieve the purposes of sentencing." Sent. Rec. at 7. That is true regardless of which base offense level this Court employs. At 27 years old, Mr. Mixayboua is still a young man. He has much of his life ahead of him and an ample opportunity to turn things around. He has a newfound commitment to sobriety and to becoming a productive member of the community. He asks this Court to give him the opportunity to

DEFENSE SENTENCING MEMORANDUM
(*United States v. Mixayboua*, CR23-103-RAJ) - 15

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

1 fulfill that commitment, and the best way to do so would be through a sentence of 33
2 months in custody followed by three years of supervised release.
3     DATED this 1st day of March 2024.

                    Respectfully submitted,

                    s/ *Andrew Kennedy*
                    Assistant Federal Public Defender
                    Attorney for Johny Mixayboua

DEFENSE SENTENCING MEMORANDUM
(*United States v. Mixayboua*, CR23-103-RAJ) - 16

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**